Good morning, Your Honors. My name is Sharon Healy. I'm counsel for Mr. Hapidudin. And, Your Honor, we have amicus counsel here. We received a call from the court that we would split the ten minutes of time, and it's our decision that amicus counsel will use the entire ten minutes, too. Okay. Lafcadio Darling, amicus counsel. I was appointed by this court as part of the pro bono panel program as amicus counsel to provide my analysis of this matter. Because of this somewhat unique appointment, my view of my role was to give an independent analysis. Rather than stepping in the shoes of his attorney, because he has an attorney, I decided to look at this case and decide what I thought of it and advise the court. And that's what I've done. Based on my analysis, I think that this should be reversed for at least two reasons. My brief talks about both of these reasons in some detail, so I won't belabor them. But I wanted to touch on them and then, of course, give the court a chance to ask me any questions. The first issue is the apparent legal error by the BIA in finding that the motion to reopen was untimely. This is a rather strange situation because the BIA's order says more than one time that Mr. Hoppe-Duden's motion is an untimely one. But then it goes on to acknowledge the section that allows a motion to reopen based on changed circumstances and evidence that couldn't have been presented at the original hearing. Now, that would be a twofold inquiry, though, wouldn't it? The first is, is he simply beyond the 90-day period for reopening? If the answer is yes, then do sufficient changed circumstances exist to excuse the untimeliness? Have I got it right? Right. Well, it seems to me, I mean, reading the – I've got here the section 8 C.F.R. 1003.2 C.3.2, and it says you can make it beyond 90 days upon a showing of changed circumstances arising in the country of nationality if such evidence is material and was not available and could not have been discovered or presented at the previous hearing. So I think there is a two-part analysis here. One is this materiality. Okay, but aren't we saying the same thing? I mean, first we simply ask, is he out of time? And then secondly, does he have an excuse for being out of time? And the excuse would be the changed circumstances. Correct. Okay. And it occurred to me that the BIA may have said, oh, he's untimely as an observation, but they appeared to say it's untimely and therefore we're not going to consider it. And so I think that was their answer. Assuming we read the order that way, although it's uphill work to read it that way, what are the changed circumstances that you argue would excuse the late filing? Well, in my brief I have not talked about whether the changed circumstances. Would excuse, yeah. Well, I think that in this case what we have is the question you have to answer is, is there a material new evidence that would justify a late filing to track the quote? And I think that the Boxing Day tsunami of 2004, obviously, this couldn't have been brought up at his IJ hearing or the affirmances by the board and by this court. It occurred well after that. Counsel, are you reading the board's order of May 31, 2005? Correct. To suggest that they didn't consider the changed circumstances argument when they cite expressly to the regulation subsection that says changed circumstances and materiality? That's what I find strange about this order. First of all, the first sentence, the motion to reopen has been filed out of time and will be denied. And then they go on to talk about the fact that they can consider it under changed circumstances. Why would it be improper to deny a motion that's out of time if you then say we don't find that he met changed circumstances? That is by definition an untimely motion, is it not? Well, I admit that it's not clear. It's not clear. I'm having a hard time. Maybe your argument is so subtly nuanced you've left me in the dust here. But I'm having a hard time understanding why the board didn't specifically address his claim and reject it because they didn't find he met changed circumstances. Well, they don't specifically address his claim, and that's the second part of my argument. How do you read the statement in the second paragraph after they cite to subsection 2C3 little Roman, two little Romans, however we do not find that the respondent has established changed circumstances in Indonesia? Well, they go on to say generalized conditions of violence and sectarian strife do not qualify an alien for asylum. That mirrors their analysis from pre-tsunami. But wasn't your argument that sectarian strife included blaming the Westerners for natural disasters like earthquakes, volcanoes, and tsunamis? Well, you could fall into that general category, but I think that this is leading into the second part of my problem with this order, which is I think that the case law requires more than what's contained in this order. More of an explanation? Correct. I think that if you look at the requirement in Maravia, for example, it says you must indicate with specificity that you heard and considered the petitioner's claims. I think that in light of the fact that we have, unlike the case that was just argued where it's a ratcheting up of a condition, we have a completely different situation here. The guy was previously saying, Indonesia is a violent place. There's a lot of sectarian strife going on. I don't want to go back. How is their order any different from a memorandum disposition issued by our court after we've read the briefs that have been submitted by the parties, considered the arguments, then we cite to the legal authority, in this case the regulation, and say we don't find that the appellant met that condition? What more does the appellate tribunal have to say to properly dispose of the issue? I think in a case like this where you have a completely different condition that you're saying triggers your right to asylum, that the least the board should do is to say, okay, we acknowledge that you're making this argument. We don't think this gets you to the point that you need to get. Instead, they're just saying something that's very similar to what was said at the proceedings below, pre-tsunami, and just saying, well, you haven't made generalized conditions of violence, sectarian strife, do not qualify. Well, that's a statement in a vacuum. We have no idea what the board found. Is it in a vacuum? I mean, I don't see that as any different. We can look to the brief that the petitioner filed in support of his motion to reopen. The board then cites to the specific regulation subsection that is at issue and then says we don't find that he met this standard. What more does the board need to do? I guess you want to have two more paragraphs saying the petitioner argues thus and so, but we reject that because we don't think that constitutes changed circumstances. But it seems to me that's a hard argument to make. I think that they need to show in their analysis that they took into account the different circumstances that came up in this case. Instead of saying you're making a motion to reopen, you're untimely, and there's generalized sectarian strife, we know, we're denying you. But his brief specifically said what the nature of the changed circumstances were, right? The economy, and they're going to blame Westerners for it, and I'm Westernized, and therefore they're going to blame me and I'm going to be persecuted. That's all in the record before the board, is it not? Yes, but the reason I find this a confusing or misleading motion, or excuse me, an order, is that I think that there was issues of sectarian strife brought up in the initial round with the board and the immigration judge, and there needs to be a distinction drawn between these generalized conditions that everyone has already rejected and a new specific event that has led to a specific targeting in his motion, according to his motion, of an Americanized group. In your view of the law, if the board had said, based on the subsequent tsunami and the deaths of 94,000 Indonesians, would that be enough? No, I think they would need to attach it to the law, and they would need to say, under the law of changed circumstances and motions to reopen, we don't think this meets the standard. I think if they had done that, we'd have a different case. You've got a little bit of time left. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you. May it please the Court, Ted Durant for the United States. The board acted within its considerable discretion when it denied Petitioner's untimely motion to reopen. If someone wants to file a motion to reopen, they have to bolster it with evidence that is material, and Petitioner did attach 12 articles to his motion to reopen, not one of which dealt with westernized Indonesian Muslim males going back there and being persecuted. There's certainly evidence of strife and horrible conditions after that horrible tsunami and earthquake, but nothing addressing his claims. So in essence, his brief are statements of counsel. There's no independent evidence showing that because of Krakatoa or the tsunami, that Muslim males who go back to Indonesia would be persecuted. The board does mention civil strife, and that is mentioned in Petitioner's last exhibit to the motion to reopen. It's a travel advisory that says conditions are lousy in Indonesia and there's civil strife going on, so Americans, please don't go there. But that's the only thing that remotely relates to Petitioner's claim. All the rest would be statements of counsel. There is no independent evidence of the record of the persecution that Petitioner mentions in the brief. So based on that, the board acted within its considerable discretion when it denied the motion to reopen as untimely. Respondent does not see anything wrong legally with the order either in terms of the replacement of the regulations. If there are no further questions, this concludes the spot. Any questions from the bench? Thank you. Thank you. Response, Mr. Tyler? Obviously, there wasn't much argument by the government, so I'll be brief as well. I think that an unsuccessful application for immigration doesn't entitle the applicant to much, but I think that the Ninth Circuit case law does entitle him to, using the court's word, a specific explanation for why this motion to reopen is denied and why he shouldn't get asylum. I just don't think he was given that here, and for that reason, it should be reversed. Okay. Thank you very much. Before we submit the case, let me say on behalf of the bench, we very much appreciate pro bono counsel in these cases. You're in a proud tradition of helping us out, and we very much appreciate your good work. So the case of Habibuddin is now submitted for decision, and we thank counsel both for their helpful arguments. There are two cases on the calendar this morning that have been submitted on the briefs, Clark v. Astrew and United States v. Matthys. Those have been submitted on the briefs. We have one last argued case, and that's Lahouti v. Varachek.
judges: Fletcher, Gould, Tallman